Tracey R. MERRELL, Plaintiff,

v.

ALL SEASONS RESORTS,
INC., Defendant.

No. CV 89–3218 DT.

United States District Court,
C.D. California.

Sept. 1, 1989.

Harris E. Kerschnar, Wallin & Klarich, Tustin, Cal., for plaintiff.

Debby R. Hambleton, Rexon, Freedman & Klepetar, Los Angeles, Cal., for defendant.

## OPINION

TEVRIZIAN, District Judge:

On August 14, 1989 this Court heard defendant ALL SEASONS RESORTS, INC.'s motion to dismiss count three of plaintiff TRACEY MERRELL's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and defendant's motion for an order pursuant to Federal Rule of Civil Procedure 39(a)(2) setting count one of plaintiff's complaint for court trial. For the reasons discussed below, this Court denies defendant's motion to dismiss count three without prejudice, and grants defendant's motion for an order that count one of the complaint be set for court trial.

*Background*

This is an action for pregnancy discrimination. Plaintiff Tracey Merrell was hired as a junior accountant for defendant All Seasons Resorts on November 1, 1988. Two weeks later, plaintiff informed defendant that she was pregnant and would require time off for medical care and an extended leave of absence near and after her due date.

Defendant contends that it informed plaintiff at her job interview that the junior accountant position required months of training, routine overtime and weekend hours, and that the accountant would be on call seven days a week. Defendant contends that plaintiff did not give any indication at her interview that she could not fulfill these requirements. Defendant claims that it offered plaintiff another position in the accounting department at the same salary and that the offered position did not have the same strenuous job requirements. Plaintiff declined the offered position and voluntarily resigned. See Complaint, Exh. A (November 18, 1988 management resignation letter, signed by plaintiff). Plaintiff alleges that the offered position was temporary rather than permanent, and that it did not include any of the fringe benefits of the junior accountant position, including vacation, sick time and health insurance. Complaint para. 6, 8.

Plaintiff alleges that she filed charges of discrimination with the California Department of Fair Employment and Housing, and that the Department issued her a right to sue letter on December 9, 1988. Complaint para. 16. That right to sue letter is not attached to the complaint. Plaintiff received a right to sue letter from the Equal Employment Opportunity Commission on March 31, 1989. Complaint para. 13 and Exh. B.

On May 25, 1989, plaintiff filed suit against defendant All Seasons Resorts, alleging:

1. pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-2;

2. pregnancy discrimination in violation of the California Fair Employment and Housing Act, Cal. Govt. Code section 12945; and

3. sex discrimination in violation of article I, section 8 of the California Constitution.

On July 11, 1989 defendant answered and filed the instant motion to dismiss plaintiff's third claim for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion for order setting count one for court trial.

*Discussion*

I. Defendant's motion to dismiss plaintiff's third claim

A. *The standard*

On a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the movant admits the well-pleaded material allegations of the complaint but denies their legal sufficiency. Thus, the motion will be granted only where it is clear that the non-moving party is entitled to no relief

under any state of facts which could be proved in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All material allegations in the complaint must be accepted as true, and all inferences must be construed in favor of the non-moving party. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 889–90 (9th Cir.1986).

### B. *Consideration of "outside materials"*

As an initial matter, plaintiff opposes the introduction of matters "outside the pleadings" into defendant's motion to dismiss. The outside matters referenced by defendant are statements made in the factual summary of defendant's motion to dismiss. The references objected to are (1) that the position of junior accountant required months of training, and (2) that plaintiff was informed of these requirements during her interview for this position.

Certainly, matters outside the pleadings may be considered if the court converts a Rule 12(b)(6) motion into a Rule 56 motion. *Carter v. Stanton,* 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Townsend v. Columbia Operations,* 667 F.2d 844 (9th Cir.1982). However, the court must give the parties adequate notice that it will rely on extraneous documents, and the parties must be allowed to present declarations, affidavits and other evidence in opposition to outside material. *Townsend,* 667 F.2d at 848 (notice proper where court requested supporting documents referenced in complaint 5 days before hearing and told counsel during opening argument that court would rely on documents provided). A motion to dismiss may be converted into a Rule 56 motion with proper notice *unless* the authenticity of the outside statements is challenged. Here, plaintiff disputes whether factual statements made without reference to the complaint are proper on a Rule 12(b)(6) motion. Only the propriety of

the statements is challenged; their authenticity is not in issue.

██ This court may consider documents submitted for a Rule 12(b)(6) motion if the complaint specifically references those documents, the authenticity of the documents is not disputed, and the affirmative defenses provided by the documents are clearly presented on the face of the complaint. *Townsend,* 667 F.2d at 848–49. The statements are apparently introduced to assert an affirmative defense of just cause to the discriminatory discharge claim. An affirmative defense under Federal Rule of Civil Procedure 8(c) may properly be asserted on a motion to dismiss. *Townsend,* 667 F.2d 844; *Goodwin v. Elkins & Co.,* 730 F.2d 99, 113 (3d Cir.1984), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984). *See also* Wright & Miller, *Federal Practice & Procedure* (1987 Supp.), Civil, Section 1277 nn. 18–19, and Section 1357 nn. 41, 87, 94–95.

The statements made in defendant's motion are contained in documents attached to plaintiff's complaint and could be considered in the context of this motion. However, the statements are not relevant to the legal issues presented. Thus, though plaintiff's opposition to the statements on this basis in misplaced, this court attaches no relevance to those statements in the context of the instant motion.

### C. *Plaintiff's third claim for pregnancy discrimination*

The subject of the instant dispute is whether plaintiff's third claim for sex discrimination in violation of the California Constitution must be dismissed. In order for that claim to be viable, this court must find:

1. that the California Constitution provides a private right of action for sex discrimination;

2. that this constitutional prohibition against sex discrimination includes discrimination because of pregnancy;

3. that any prohibition against pregnancy discrimination provided by the constitution *or the common law* existed prior to the passage of the 1978

amendments to the California Fair Employment and Housing Act prohibiting pregnancy discrimination; and

4. that the California Fair Employment and Housing Act does not preempt the preexisting common law claim for pregnancy discrimination and thus does not provide plaintiff's exclusive remedy for such a claim.

The court will take each of these propositions in turn.

1. *Does the California Constitution provide a private right of action for sex discrimination in employment?*

Plaintiff's third claim is for breach of the prohibition against sex discrimination contained in article I, section 8 of the California Constitution, which states:

A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin.

Art. I, sec. 8 (formerly art. XX, sec. 18, enacted 1879 [prohibiting sex discrimination in any "business, vocation or profession"]; amended 1970; amended and renumbered art. I, sec. 8 in 1974) [adding "employment" and broadening the provision to include race, creed, color or national or ethnic origin].

■ It is axiomatic that a constitutional right needs no enabling legislation to provide for its enforcement. *Rose v. California,* 19 Cal.2d 713, 719, 123 P.2d 505 (1942). *See, e.g., Froyd v. Cook,* 681 F.Supp. 669, 673 n. 13 (E.D.Cal.1988) (private action for employment discrimination, art. I, sec. 8); *Sipple v. Chronicle Publishing Co.,* 154 Cal.App.3d 1040, 201 Cal.Rptr. 665 (1984) (private action to enforce constitutional right to privacy, art. I sec. 1); *Robertson v. Baldwin,* 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715 (1897) (private action to enforce prohibition against involuntary servitude, art. I sec. 6); *Bautista v. Jones,* 25 Cal.2d 746, 155 P.2d 343 (1945) (art. I, sec. 1 provides some degree of protection against discriminatory actions by employers and

labor unions). *Compare Jones v. American President Lines, Ltd.,* 149 Cal.App.2d 319, 323, 308 P.2d 393 (1957) (prior to amendments to article I, section 8 of the California Constitution and Fair Employment and Housing Act prohibiting race discrimination, discrimination by private employers on basis of race not protected by California law).

In California, employment is presumed to be at-will. Cal.Labor Code section 2922. However, an employer's right to discharge an employee may be limited by the existence of an express or an implied contract or by public policy. *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 665, 254 Cal. Rptr. 211, 765 P.2d 373 (1988). Discharging an employee in violation of a clearly established public policy may subject an employer to tort liability. *Id.* at 668–69, 254 Cal.Rptr. 211, 765 P.2d 373; *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *Hentzel v. Singer Co.,* 138 Cal. App.3d 290, 188 Cal.Rptr. 159 (1982). To form the basis of a wrongful discharge suit, a public policy (1) must be clearly established, (2) must implicate fundamental policy concerns, and (3) must create a duty which inures to the public benefit. *Foley,* 47 Cal.3d at 669, 254 Cal.Rptr. 211, 765 P.2d 373. The California Supreme Court left open the question of whether the basis for a public policy must be explicitly expressed in constitutional or statutory provisions or might be provided by general principles or non-legislative materials. *Id.* at 669, 254 Cal.Rptr. 211, 765 P.2d 373.

This court notes the paucity of case law regarding wrongful discharge on the basis of sex brought pursuant to article I, section 8 of the California Constitution. *Jones v. American President Lines, supra,* asserted a public policy wrongful discharge claim, but the court held that denial of employment on the basis of race was not yet protected by any provision of the California Constitution or by statute. 149 Cal. App.2d at 323. Only one reported case directly addresses this proposition.[1] In

1. *Rojo v. Kliger,* 209 Cal.App.3d 10, 257 Cal.Rptr.

158 (1989) also addressed this issue and held

*Froyd v. Cook*, 681 F.Supp. 669 (E.D.Cal. 1988), the court held that an alleged discharge for reporting sexual harassment was properly asserted as a claim for wrongful discharge in violation of public policy. *Id.* at 671–72. Though apparently not pleaded, *see id.* at 671–72 and n. 8, the court held that article I, section 8 of the California Constitution provided a basis for plaintiff's gender-related public policy claim. *Id.* at 673.

■ This court finds that a private right of action for employment discrimination exists under article I, section 8 of the California Constitution, article I, section 8. On its face the section is not limited to state action. Furthermore, the preceding section of the California Constitution provides that:

a person may not be deprived of life, liberty or property without due process of law or denied equal protection of the laws; . . .

Cal. Constitution, article I, section 7(a). State actions which discriminate in employment on the basis of sex violate this section. *Sail'er Inn v. Kirby*, 5 Cal.3d 1, 8–9, 95 Cal.Rptr. 329, 485 P.2d 529 (1971). To limit the prohibitions of article I, section 8 to state actions as well would render this section mere surplusage. This court finds that article I, section 8 is broader in scope than article I, section 7, and that a private right of action for sex discrimination in employment exists under the California Constitution.

2. *Does the constitutional prohibition against sex discrimination include discrimination because of pregnancy?*

Plaintiff's pregnancy discrimination claim must fall within the scope of the constitutional prohibition on sex discrimination in order to be covered by the prohibitions of article I, section 8.

a. *statutory history and preexisting rights*

Pregnancy discrimination is expressly prohibited by the California Fair Employ-

ment and Housing Act ("Act"), which prohibits discrimination in any term, condition, or privilege of employment. The statute prohibits discrimination in selection for a training program, promotion, or discharge because of an employee's pregnancy. Cal. Govt.Code section 12945. The legislative history of the statute reveals no conclusive evidence as to whether the legislature believed that pregnancy discrimination was covered by the prohibition on sex discrimination under the California Constitution. No reported cases have directly addressed the issue. The Fair Employment and Housing Act was amended in 1970 to prohibit discrimination on the basis of sex; the prohibition on discrimination on the basis of pregnancy was added in 1978.

The brief history of the statutory pregnancy discrimination amendment appears to be as follows. In 1976 the United States Supreme Court held that an employer's failure to provide disability benefits to pregnant employees did not violate Title VII's prohibition against sex discrimination. *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The following year, the court held that an employer violated Title VII's prohibition on sex discrimination when an employee's seniority rights were forfeited after she returned to work from maternity leave. *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). The court distinguished between the employer's conferring a benefit (disability benefits) and imposing a burden on pregnant employees; only the imposition of a burden would constitute an unlawful employment practice under Title VII. Under this interpretation of Title VII, an employer was free to grant male workers employment benefits that it did not provide to pregnant female employees.

Reacting to these two decisions, Congress passed the Pregnancy Discrimination

that a claim for sex discrimination in employment was properly asserted as a public policy wrongful discharge claim supported by article I, section 8. However, the California Supreme Court has granted review in the matter, and thus the case may not be cited for any proposi-

tion. Cal. Rule of Court 976. As the matter presents several issues for review, this court refuses to draw any substantive conclusion from the California Supreme Court's grant of review of the case.

Act in 1978, amending Title VII to include pregnancy as a prohibited basis of discrimination. 42 U.S.C. section 2000e–2; *California Federal Sav. & Loan Assn. v. Guerra*, 479 U.S. 272, 277, 107 S.Ct. 683, 687, 93 L.Ed.2d 613 (1987); *Newport News Shipbuilding Co. v. EEOC*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983). *See* 5 U.S.Cong. & Admin.News 4749, 4750–51 (1978). At the same time, the California Legislature passed AB 1960 [1978 California Statutes chapter 1321, codified at California Government Code section 12945] prohibiting employment discrimination on the basis of pregnancy. The statute did not prohibit employers from refusing to hire pregnant women, but it did prohibit discrimination in employment based on their pregnancy once they were hired, and provided a maternity leave of up to four months. The California statute provides remedial relief broader than the Title VII remedies, but the additional state law remedies are not preempted by Title VII. *California Federal Sav. & Loan Assn.*, 479 U.S. at 292, 107 S.Ct. at 695. The California statute expressly noted the pending Pregnancy Discrimination Act in Congress, and provided that the maternity leave provision would not affected by the passage of the Pregnancy Discrimination Act. 1978 Cal.Stats. ch. 1321, section 4.

The only ascertainable impetus for the statute is contained in a comment attached to the bill:

> Though the Fair Employment Practice Commission has adopted guidelines which provide a broad range of protections for pregnant workers, a number of United States Supreme Court decisions have nullified parts of the guidelines by imposing a much narrower theory on the tests for determining disparate impact. This bill overcomes current court rulings by naming pregnant employees as a protected class....

The State Bar Committee's analysis of Chapter 1321 is that it was enacted to overrule the holding of *General Electric Co. v. Gilbert, supra,* that pregnancy discrimination was not gender-based discrimination. *See Summary of Selected 1978 California Legislation*, 10 Pacific L.J. 463–464 (1978). It is not clear whether the Legislature was establishing an additional protected class of employees or clarifying that pregnancy discrimination is sex discrimination.

The pregnancy discrimination statute provides that "[t]his section shall not be construed to affect any other provision of law relating to sex discrimination or pregnancy." Cal.Govt.Code section 12945(d). The inclusion of this language in the statute presupposes the existence of the right to be free from sex and pregnancy discrimination. This provision implies that the statute provides remedies for *preexisting* sex and pregnancy discrimination rights. Indeed, if a new statutory right was being created for pregnancy discrimination, the inclusion of "pregnancy" in that provision would have been completely unnecessary. *Cf.* Cal.Govt.Code sections 12993(a), 12993(c) (preserving other statutory and civil rights claims directed at discrimination). Thus, the language of the statute provides evidence that sex and pregnancy discrimination were already prohibited prior to the passage of the pregnancy discrimination amendment to the Act.

Certainly, the statutory protections provided to pregnant workers are narrower than those provided to other protected classes.[2] *Compare* Cal.Govt.Code section 12945 *with* Cal.Govt.Code section 12940. However, the statutory remedies provided to pregnant employees by the California statute are in some respects broader than the remedies available under Title VII. Cal. Govt.Code section 12945(b)(2) (mandatory leave available). Pregnancy discrimination is a unique form of sex discrimination because the underlying condition is tempo-

---

**2.** Cal.Govt.Code Section 12945 does not, for example, provide protections against discrimination in *hiring* pregnant workers, while Cal.Govt.

Code section 12940(a)(1) prohibits discrimination in hiring on any prohibited basis. *See*

rary.[3] The legislature's desire to redress this form of discrimination by tailoring statutory remedies should not be taken as evidence that there were no preexisting prohibitions against pregnancy discrimination in employment. In other words, the specific statutory remedies now provided to pregnant employees should not divert our attention from the preexisting rights available to pregnant workers.

It is true that certain previously non-protected categories have been independently added to the employment prohibitions of the Act. *See* Cal.Govt.Code section 12941 (age discrimination); *Strauss v. A.L. Randall Co.*, 144 Cal.App.3d 514, 194 Cal. Rptr. 520 (1983) (no common law claim for age discrimination because such discrimination not prohibited prior to enactment of Fair Employment and Housing Act protections); *Gay Law Students Assn. v. Pacific Telephone and Telegraph Co.*, 24 Cal.3d 458, 156 Cal.Rptr. 14, 595 P.2d 592 (1979) (legislature free to create new statutorily protected categories for prohibited employment discrimination; common law and statutory claim for sex discrimination did not prohibit sexual preference discrimination). However, the traditional scope of a protected category may be expanded by subsequent case law interpretations. For example, the prohibitions on sex discrimination have been expanded to include prohibitions on sexual harassment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

### b. case law development

California decisional law affords the broadest possible protection to employees discriminated against on the basis of sex. California was one of the first states to find sex a suspect class for equal protection analysis and apply a strict scrutiny standard to discrimination based on sex. Under a strict scrutiny analysis, the government must have a compelling state interest in order to justify gender-related classifications. *Sail'er Inn v. Kirby*, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971). Under federal law, gender-based classifications are subject only to an intermediate standard of scrutiny, in which the government is merely required to demonstrate that the gender-based classification be substantially related to an important governmental interest. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979); *Craig v. Boren*, 429 U.S. 190, 197–98, 97 S.Ct. 451, 456–57, 50 L.Ed.2d 397 (1976); *Frontiero v. Richardson*, 411 U.S. 677, 691–92, 93 S.Ct. 1764, 1772–73, 36 L.Ed.2d 583 (1973); *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225 (1971).

In *Sail'er Inn v. Kirby*, the California Supreme Court held a statute prohibiting women from working as bartenders unconstitutional on equal protection grounds, holding that "the statute limits the fundamental right of one class of persons to pursue a lawful profession." 5 Cal.3d at 17, 95 Cal.Rptr. 329, 485 P.2d 529. Though not the basis for the court's decision, the fundamental right to pursue a lawful profession free from sex discrimination is contained in article I, section 8 of the California Constitution. This court finds the California Supreme Court's use of that parallel language instructive. This reference to the language of article I, section 8, combined with the higher standard of scrutiny applied by *Sail'er Inn v. Kirby*, leads this court to conclude that the term "sex discrimination" is broader in scope and has greater coverage in California than that

---

*Ibarbia v. Regents of University of California,* 191 Cal.App.3d 1318, 237 Cal.Rptr. 92 (1987).

**3.** This attribute of pregnancy discrimination, along with its medical consequences and the medical context in which these claims arise, readily lend the issue to analyses stressing the disability engendered by pregnancy rather than the discriminatory effects that such policies have against women. *See e.g., Nashville Gas Co.*

*v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); *Boren v. Dep't of Employment Dev.,* 59 Cal.App.3d 250, 130 Cal.Rptr. 683 (1976); *Kornblum v. Newark Unified School Dist.,* 37 Cal.App.3d 623, 112 Cal.Rptr. 457 (1974).

term has in federal statutes and constitutional provisions.

This finding is bolstered by *Boren v. Department of Employment Development*, 59 Cal.App.3d 250, 130 Cal.Rptr. 683 (1976). There, the court held unconstitutional as sex discrimination a statute which prohibited working women from receiving unemployment insurance benefits when they went on maternity leave if they were the secondary income for the family. The court distinguished *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), upholding a similar exclusion of unemployment benefits due to pregnancy, on the grounds that the more stringent California standard compelled a different result. *Boren*, 59 Cal.App.3d at 260, 130 Cal.Rptr. 683. Though the statute was struck down on equal protection grounds, it is illustrative of California's view that certain forms of pregnancy discrimination constitute unlawful sex discrimination.

In *Kornblum v. Newark Unified School Dist.*, 37 Cal.App.3d 623, 112 Cal.Rptr. 457 (1974), the court held that a requirement that school employees take mandatory pregnancy leave three months prior to and three months after childbirth unconstitutionally impinged on the employee's fundamental right to pursue a profession and violated the employee's due process rights.[4] *Id.* at 626–27, 112 Cal.Rptr. 457. The following year the California Legislature enacted California Labor Code section 1420.2 (amended and recodified at California Government Code section 12943), making it an unlawful employment practice for a school district to refuse to hire, select for a training program, discharge or otherwise discriminate against a "female person" because of pregnancy. Cal.Govt.Code section 12943(a). The statute, enacted in 1975, also made it an unlawful employment practice for a school district:

> to terminate any employee who is temporarily disabled, pursuant to or on the basis of an employment policy under which insufficient or no leave is available, if the policy has a disparate impact

on employees of one sex and is not justified by necessity of the public schools. Cal.Govt.Code section 12943(b). The statute clearly states that the legislature believed certain types of pregnancy discrimination to be *sex discrimination* if the policy at issue had a disparate impact upon female employees.

### c. scope of constitutional prohibitions against sex discrimination

This court finds that California law favors the inclusion of pregnancy within the scope of the prohibitions against sex discrimination embodied in the California Constitution. California has accorded gender the broadest possible protection against discrimination, protection that is broader than the federal standard in both right and remedy. The *Sail'er Inn, Boren* and *Kornblum* cases discussed above were all decided prior to the enactment of the pregnancy discrimination statute, and *Boren* and *Kornblum* struck down employment-related actions which had the effect of discriminating against pregnant women. In addition, the legislature has provided that certain types of policies regarding pregnant school employees might constitute sex discrimination if the policy has a disparate impact on female employees and is not justified by necessity. Finally, the legislature recognized in the Act itself that protections against sex and pregnancy discrimination existed prior to the Act. *See* Cal. Govt.Code section 12945(d).

The California Legislature's amendment of the Fair Employment and Housing Act to provide statutory rights and remedies for pregnant workers was not necessary to prohibit pregnancy discrimination. Pregnancy discrimination was already implicitly prohibited by the California Constitution. The legislature is, of course, free to provide additional statutory protections and to devise statutory enforcement mechanisms for existing rights. *Gay Law Students Assn.*, 29 Cal.3d at 485, 156 Cal.Rptr. 14, 595 P.2d 592. The California Legislature's desire to clarify the protections applicable

---

**4.** The due process rights at issue are derived from the fourteenth amendment to the United States Constitution and from article I, section 7(a) of the California Constitution.

to pregnant workers is especially understandable in the absence of case law specifically addressing pregnancy as sex discrimination and in light of adverse and more restrictive United States Supreme Court authority on the issue.

Finally, the court notes that the purpose of the pregnancy discrimination amendment to the Act is to promote equal employment opportunities for *women* by guaranteeing them the right to participate equally in the workplace without punishing them for exercising their fundamental right to have a family. *See* Cal.Govt. Code section 12920; *California Federal Sav. & Loan Assn.*, 479 U.S. at 286, 289–90, 107 S.Ct. at 689, 694–95. Equal employment opportunities for women have long been protected by article I, section 8 of the California Constitution.

3. *Did the prohibition against pregnancy discrimination provided by the constitution or the common law exist prior to the passage of the 1978 amendments to the California Fair Employment and Housing Act prohibiting pregnancy discrimination?*

California's remedies doctrine is that where a new right is provided by statute and the statute provides a statutory remedy, the statutory remedy is exclusive. *Palo Alto–Menlo Park Yellow Cab Co. v. Santa Clara County Transit District*, 65 Cal.App.3d 121, 131, 135 Cal.Rptr. 192 (1976). However, where the right sought to be enforced already existed at common law or by statute before the new statutory remedy was created, the new statutory remedy is cumulative rather than exclusive. *Flores v. Los Angeles Turf Club*, 55 Cal.2d 736, 747, 13 Cal.Rptr. 201, 361 P.2d 921 (1961); *Hentzel v. Singer Co.*, 138 Cal. App.3d 290, 303, 188 Cal.Rptr. 159; *Froyd v. Cook*, 681 F.Supp. 669, 674, (E.D.Cal. 1988); *Mahoney v. Crocker National Bank*, 571 F.Supp. 287, 293 (N.D.Cal.1983).

The California Constitution has provided protection against sex discrimination in pursuit of "any lawful business, vocation, or profession" since 1879. Cal. Const. art. XX, section 18. Though the Fair Employment and Housing Act protections were initially passed in 1959 (under the Labor Code), sex was not included as a protected category. In 1970 the Fair Employment and Housing Act was amended to include sex discrimination in employment. In 1974, the California Constitution was amended and renumbered to prohibit, among other things, discrimination in *employment* based on sex. Finally, in 1978, in response to perceived limitations on the rights of pregnant employees, the California Legislature provided statutory protections and remedies for pregnant workers.

As discussed above, two California cases involving sex discrimination against pregnant workers were decided prior to the 1978 pregnancy discrimination amendment. Both decisions held unlawful certain statutes and employment practices which discriminated against female employees. Clearly, if the constitution or common law provided a cause of action for sex discrimination *including* pregnancy, this claim existed prior to the passage of the pregnancy discrimination statute in 1978. *Cf. Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970) (common law claim for intentional infliction of emotional distress for racially motivated discharge allowed even though racial discrimination in employment prohibited by Section 12940 of the Fair Employment and Housing Act); *Harlan v. Sohio Petroleum Co.*, 677 F.Supp. 1021, 1031 (N.D.Cal.1988) (common law claims for breach of contract and breach of the implied covenant of good faith and fair dealing related to plaintiff's age discrimination claim not preempted by Fair Employment and Housing Act).[5]

---

5. The plaintiff in *Harlan v. Sohio Petroleum Co.*, 677 F.Supp. 1021 (N.D.Cal.1988) had made a claim for wrongful discharge because of age in violation of public policy, but conceded that his claim was preempted by the Fair Employment and Housing Act after *Strauss v. A.L. Randall Co.*, 144 Cal.App.3d 514, 518–20, 194 Cal.Rptr. 520 (1983). The court did not address the issue. *Harlan* at 1031. *Harlan* is not apposite because age discrimination was not prohibited at common law prior to the passage of the Act, while sex discrimination and certain forms of pregnancy discrimination were prohibited.

Section 12945 of the Act expressly provides that the statute does not "affect any other provision of law relating to sex discrimination or pregnancy." Cal.Govt. Code section 12945(d). This language is surplusage with regard to pregnancy discrimination if the statute was creating a new statutory right prohibiting pregnancy discrimination. The statute recognizes the preexisting right to be free of pregnancy discrimination. In light of the legislative comment clarifying the scope of the protections and remedies available to pregnant California employees after adverse and limiting United States Supreme Court decisions, this court construes the statute to be remedial in nature only, and finds that the statute does not create a new statutory right prohibiting pregnancy discrimination.

■ This court finds that the right to be free of pregnancy discrimination in employment existed prior to the 1978 amendment to the Fair Employment and Housing Act prohibiting discrimination on the basis of pregnancy. Thus, under California remedies law, the statutory remedy provided by Section 12945 of the Act is cumulative rather than exclusive.

4. *Does the California Fair Employment and Housing Act provide the exclusive remedy for pregnancy discrimination by preempting all preexisting common law claims?*

Defendant argues that even if plaintiff's statutory and common law remedies would otherwise be cumulative, the Fair Employment and Housing Act preempts any common law right that plaintiff may have had prior to the passage of the Act. The preemption provision of the Act provides:

While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of

Section 51 of the Civil Code [Unruh Civil Rights Act].

Cal.Govt. Code section 12993(c) (enacted 1980).

■ As a matter of first principles, the California Legislature may not "preempt" provisions of the California Constitution. Indeed, the purpose of a Constitution is to place certain expressions of the will of the people beyond the power of subordinate political bodies like the legislature.

Second, defendant's argument is misplaced even as a matter of statutory interpretation. California Government Code Section 12993(c) preempts "all other laws banning discrimination in employment ... by any city, city and county, county or other political subdivision of the state." The intent of the statute is to preempt all *local regulations* governing discrimination, not to preempt all *rights* relating to discrimination. The statute does not, for instance, mention preemption of common law rights. Where such a right existed at common law, then, the right survives the preemption provision of the Fair Employment and Housing Act.

In addition, California Government Code section 12993 provides that:

Nothing contained in [this Act] shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, *sex* or age.

Cal.Govt. Code section 12993(a) (emphasis added).

If any uncertainty as to whether the Act preempts existing common law claims remains, this provision removes all doubt. First, a legislature can only "repeal" other legislative acts, statutes and resolutions. Second, the statute expressly preserves existing common law claims and other claims of discrimination brought pursuant to the laws of the state. Article I, section 8 of the California Constitution is certainly a "law of the state". Cal.Code Civ. Proc. section 1897. Thus, by its own terms the Act does not preempt the rights conferred

by article I, section 8 of the California Constitution.

This court is aware of other decisions holding that the Fair Employment and Housing Act preempts common law discrimination claims. *See Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322 (9th Cir. 1987) (age discrimination); *Strauss v. A.L. Randall Co.*, 144 Cal.App.3d 514, 194 Cal. Rptr. 520 (1983) (same); *Mahoney v. Crocker National Bank*, 571 F.Supp. 287 (N.D.Cal.1983) (same); *Baker v. Kaiser Aluminum & Chemical Co.*, 608 F.Supp. 1315 (N.D.Cal.1984) (religious discrimination); *Ficalora v. Lockheed Corp.*, 193 Cal. App.3d 489, 238 Cal.Rptr. 360 (1987) (retaliatory discharge). However, all of these cases considered claims of discrimination that were not prohibited by common law or by statute prior to the passage of the Act. Certainly none of the rights asserted in those cases have the benefit of long-standing constitutional protection against discrimination the way that sex does under article I, section 8.

*Robinson v. Hewlett–Packard Corp.*, 183 Cal.App.3d 1108, 228 Cal.Rptr. 591 (1986) is not contrary. There, the California Court of Appeal upheld the trial court's dismissal of plaintiff's wrongful discharge claim for racial discrimination in violation of public policy. *Id.* at 1131–32, 228 Cal. Rptr. 591. Race discrimination in employment is prohibited by the Fair Employment and Housing Act. Cal.Govt. Code section 12940. However, the court's decision was not based on the preemptive effect of the Act.[6] Rather, the court held that an employee could not state a retaliatory discharge claim under the recognized public policy in favor of collective bargaining contained in California Labor Code section 923 for his request to have an attorney present during performance evaluations. *Id.* at 1131–32 and nn. 20 and 21, 228 Cal.Rptr. 591; *see Hentzel v. Singer Co.*, 138 Cal.

App.3d 290, 297, 188 Cal.Rptr. 159 (1982); *Montalvo v. Zamora*, 7 Cal.App.3d 69, 75, 86 Cal.Rptr. 401 (1970).

*Hudson v. Moore Business Forms, Inc.*, 609 F.Supp. 467, 474 (N.D.Cal.1984), *aff'd in part, vacated in part on other grounds*, 827 F.2d 450 (9th Cir.) *as amended*, 836 F.2d 1156 (9th Cir.1987) is directly contrary regarding preemption of common law claims of sex discrimination by the Fair Employment and Housing Act. However, the district court in *Hudson* did not consider the constitutional provision or the sex discrimination cases predating the passage of the Fair Employment and Housing Act in applying the exclusive remedies doctrine.[7] 609 F.Supp. at 474. Thus, the preemption issue, insofar as it applies to sex discrimination cases, was wrongly decided. *See Froyd v. Cook*, 681 F.Supp. 669, 675–76 (E.D.Cal.1988); *cf. Jones v. American President Lines, Ltd.*, 149 Cal.App.2d 319, 323, 308 P.2d 393 (1957) (discrimination by private employers on basis of race not prohibited where case no constitutional or statutory protections provided).

## II. Defendant's motion to strike plaintiff's Title VII jury demand

Defendant moves for an order specifying that plaintiff is not entitled to a jury trial on her Title VII claim. Plaintiff does not dispute defendant's motion; instead, plaintiff contends that her jury demand is only for "all the issues so triable". Thus, plaintiff contends that defendant's order is not necessary.

Federal Rule of Civil Procedure 39(a) governs jury trials, and states in relevant part:

> When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless ... (2) the court upon motion or of its own initiative

---

6. The same analysis applies to the recent decision in *DeHorney v. Bank of America*, 879 F.2d 459 (9th Cir.1989). There, the court affirmed the trial court's dismissal on summary judgment of plaintiff's race-related wrongful discharge claim on the ground that plaintiff had failed to demonstrate a prima facie case of race discrimi-

nation. The possible preemption of plaintiff's common law race discrimination claim by the California Fair Employment and Housing Act was not discussed.

7. The issue was not addressed on appeal.

finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

Defendant has moved for an order specifying that some of the issues potentially subject to plaintiff's general jury demand be ordered appropriate for a court trial only. An order specifying certain issues for court trial is appropriate pursuant to Rule 39(a)(2).

■ The remedies provided by Title VII are equitable in nature; thus, there is no right to a jury trial for Title VII claims. 42 U.S.C. section 2000e–5(g); *Patterson v. McClean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Great American Federal Sav. & Loan Assn. v. Novotny,* 442 U.S. 366, 375 n. 19, 99 S.Ct. 2345, 2350 n. 19, 60 L.Ed.2d 957 (1979); *Shah v. Mt. Zion Hospital and Medical Center,* 642 F.2d 268, 272 (9th Cir.1981).

### ORDER

For the reasons discussed above, this Court orders:

1. that defendant All Seasons Resort Inc.'s motion to dismiss plaintiff's third claim for wrongful discharge in violation of public policy is DENIED;

2. that defendant's motion for order pursuant to Federal Rule of Civil Procedure 39(a)(2) setting for court trial count one of plaintiff's complaint for pregnancy discrimination in violation of Title VII, 42 U.S.C. section 2000e–2, is GRANTED.