19 F.3d 1440
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Margot Stevens MORROW; Douglas Morrow, Plaintiffs-Appellants,
v.
CITY OF GLENDALE, Defendant-Appellee.
 No. 92-56286.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 4, 1994.*
Decided March 17, 1994.
 
 1
 Before: BROWNING and KLEINFELD, Circuit Judges, and FONG,** District Judge.
 
 
 2
 MEMORANDUM***
 
 I.
 A.
 
 3
 The district court did not convert the City of Glendale's motion to dismiss into a motion for summary judgment sua sponte. In its Notice of Motion, the City indicated it was moving to "Dismiss Plaintiffs' Complaint or in the Alternative for Summary Judgment ... F.R.C.P. 12(b)(1), 12(b)(6), and Rule 56." When the moving party gives formal notice, as here, the nonmoving party is fairly apprised that the district court may look beyond the pleadings.[1] Cf. Garaux v. Pulley, 739 F.2d 437, 438-39 (9th Cir.1984) (requiring movant to give pro se litigant formal notice).
 
 
 4
 In addition to formal notice, the Morrows had other reasons to know the district court would consider matters outside the pleadings. The City's motion was accompanied by the declarations of Aileen R. Boyle and Assistant Fire Chief Christopher R. Gray. The Morrows themselves made the letter from Assistant Fire Chief Gray part of the record by attaching it to their complaint.[2] Townsend v. Columbia Operations, 667 F.2d 844, 849 (9th Cir.1982) (holding nonmovant had notice where "[t]he complaint itself invited the court to [consider matters outside the pleadings]"); Grove v. Mead School Dist. No. 354, 753 F.2d 1528, 1533 (9th Cir.1985) ("A represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment."). Finally, although the City relied heavily on the Gray letter in its reply brief in support of its motion, the Morrows did not object, did not ask to submit opposing materials, and did not move for reargument or reconsideration after the district court ruled. Townsend, 667 F.2d at 850 ("Never having asked in the district court to submit 'outside' material opposing summary judgment, appellants cannot be heard to complain now.").
 
 
 5
 The Morrows argue the district court improperly relied on the proposition that a high-rise building presents unique fire dangers when compared to a detached single-family house. Although the parties and the district court focused on this issue at oral argument, the Morrows did not object that the City was relying on evidence outside the complaint or that the record could not support such an inference.[3]
 
 B.
 
 6
 The Morrows choose to oppose the City's entire motion, including the motion for summary judgment. Their opposition papers are entitled: "Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss or in the Alternative for Summary Judgment." If they desired more time for discovery, they should have moved to continue the motion. At the very least, they should have informed the district court they were not prepared to oppose the motion for summary judgment because they had not yet had an opportunity to conduct sufficient discovery. Fed.R.Civ.P. 56(f). Since the Morrows opposed the motion on the merits without indicating they needed more time for discovery, the district court was entitled to decide the motion in its entirety.
 
 II.
 A.
 
 7
 The ordinances are not subject to strict scrutiny. The Morrows' argument that they infringe the fundamental right to be free from governmental intrusions in one's home is frivolous. The Morrows cite no authority that such a right exists outside the Fourth Amendment or that building codes or similar regulations intrude upon any fundamental right. The principal case relied on by the Morrows is a First Amendment case, not a due process case. Frisby v. Schultz, 487 U.S. 474 (1988). Frisby held an ordinance that prevented picketing in front of a dwelling to be a valid time, place, manner restriction, because the state had a legitimate interest in protecting residential privacy. It did not hold residential privacy is a fundamental right protected by the due process clause or that such a right is infringed by an ordinance requiring safety features in residences.
 
 B.
 
 8
 A statute that does not implicate a fundamental right does not violate due process if "there is an evil at hand for correction, and ... it might be thought that the particular legislative measure was a rational way to correct it." Williamson v. Lee Optical, Inc., 348 U.S. 483, 488 (1955).
 
 
 9
 The ordinances are not arbitrary because they apply to buildings that have fire resistent walls or because the benefits of fire sprinklers could be achieved through less intrusive device. In Queenside Hills Realty Co. v. Saxl, 328 U.S. 80 (1946), the Supreme Court rejected an identical challenge to an ordinance requiring lodging houses to install automatic sprinkler systems, stating:
 
 
 10
 We are not concerned with the wisdom of this legislation or the need for it. Protection of the safety of persons is one of the traditional uses of the police power of the States. Experts may differ as to the most appropriate way of dealing with fire hazards in lodging houses. Appellant, indeed, says that its building, far from being a fire-trap, is largely fireproof; and to the extent that any fire hazards exist, they are adequately safeguarded by a fire alarm system, constant watchman service, and other safety arrangements. But the legislature may choose not to take the chance that human life will be lost in lodging house fires and adopt the most conservative course which science and engineering offer. It is for the legislature to decide what regulations are needed to reduce fire hazards to the minimum.
 
 
 11
 Id. at 82-83 (citation omitted).
 
 
 12
 The Court's analysis applies with equal force to this case. In Queenside Hills, the Court addressed the sufficiency of a complaint and thus necessarily assumed the truth of the plaintiff's allegations.[4] The City was entitled to judgment even assuming the truth of the Morrows' allegations or even assuming the Morrows introduced the evidence they identify in their papers.
 
 C.
 
 13
 A statute that does not discriminate against a suspect class does not violate the equal protection clause if its classification scheme is rationally related to a legitimate government interest. New Orleans v. Duke, 427 U.S. 297, 303 (1976). This standard of review is "highly deferential." Southern Pacific v. City of Los Angeles, 922 F.2d 498, 507 (9th Cir.1990).
 
 
 14
 The city ordinances do not deprive the Morrows of equal protection of the law because they exclude existing detached single-family houses. The analysis of Queenside Hills applies. Just as the City may determine "what regulations are needed to reduce fire hazards to the minimum," it may also determine what buildings present serious fire hazards. Indeed, "[e]xperts may differ" over whether fire is more of a danger in a high-rise building or a detached single-family house. The City's conclusion that high-rise buildings present unique fire hazards is not arbitrary. The very nature of high-rise buildings indicates that they present unique fire hazards. Since they are taller than single-family houses, they are more difficult to access, and since they are more densely populated than houses, they place more people in danger when a fire occurs.[5] This conclusion does not depend on extraneous evidence, but is easily discernible from judicially noticeable facts and the face of the city ordinances.
 
 D.
 
 15
 The Fire Chief did not violate the constitution when he denied the Morrows an exemption. The Fire Chief did not act arbitrarily. Assistant Fire Chief Gray concluded that fire sprinklers are the best form of fire prevention in high-rise buildings. The Morrows cite no authority in support of the proposition that a government official who resolves a debatable issue against them violates the federal constitution.
 
 E.
 
 16
 The ordinances do not constitute a per se taking. There was no physical invasion of the Morrows' property by a third-party, but merely a regulation of housing conditions. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 440 (1982).[6]
 
 F.
 
 17
 The City did not violate the Morrows' procedural due process rights by failing to give them notice. When a governmental body passes a law of general application that effects a relatively large number of citizens, those effected are not entitled to notice before it is enacted. Bi-Metallic Investment Company v. State Board of Equalization, 239 U.S. 441, 445 (1915) (J. Holmes) ("General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."). The case relied upon by the Morrows-- Harris v. County of Riverside, 904 F.2d 497 (9th Cir.1990)--involved a zoning ordinance that specifically targeted the plaintiff's land for a zoning change. See also Londoner v. Denver, 210 U.S. 373, 385 (1908) (finding procedural due process violated where law affected a relatively small number of persons). The ordinances at issue in this case require the installation of fire sprinklers in all buildings of four-stories or more.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 The Honorable Harold M. Fong, District Judge, United States District Court for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In every case cited by the Morrows, including Portland Retail Druggists Ass. v. Kaiser Foundation Health Plan, 662 F.2d 641 (9th Cir.1981), the motion at issue was noticed as a motion to dismiss
 
 
 [2]
 The Morrows argue the Gray letter was inadmissible hearsay, but by attaching the letter to their complaint, they effectively introduced it into evidence. Moreover, as noted in the text, the Morrows did not object to the letter on evidentiary grounds at oral argument after the City relied on it in its reply brief
 
 
 [3]
 The Morrows suggest the district court ruled on claims that were not challenged by the City's motion, but the motion challenged the entire complaint
 
 
 [4]
 The Morrows state that the issue of whether an ordinance is rationally related to a legitimate government purpose involves questions of fact rarely susceptible to summary adjudication. At least within the context of ordinances designed to prevent fires, Queenside Hills is direct authority to the contrary. In addition, the Morrows cite City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432 (1985). This case, however, involved an ordinance that excluded the mentally ill from certain neighborhoods, not an ordinance designed to prevent fires
 
 
 [5]
 The Morrows argue this rationale is contradicted by the requirement that new single-family houses contain fire sprinklers. The City may conclude that the dangers of fire in single-family houses are great enough to require fire sprinklers, but not so great as to require retrofitting with fire sprinklers
 
 
 [6]
 The Morrows do not claim that the district court erred in its application of the regulatory taking doctrine. Indeed, as Loretto notes, the Supreme Court has consistently upheld ordinances that regulate housing conditions against taking claims